May it please the Court. There is no North Carolina appellate case that has enforced a release to allow a negligent driver to escape responsibility for violating a statutory rule of the road. In fact, there is no North Carolina appellate case that has enforced a release to allow a negligent person to escape responsibility for violating a duty imposed by statutory law. In this case, the government's employee negligently violated the statutory rule of the road that required him to stop for a red light at an intersection. He seriously injured Debbie McMurray in the wreck that he caused when he ran the red light. If the United States is allowed to enforce the release and escape liability for this negligence, there are two things that will happen. One, Debbie McMurray will be left without a remedy against the United States for this wrong. And two, the practice of obtaining releases from passengers is likely to grow, and many more passengers injured by the negligence of their drivers will be left without the remedy that the legislature intended them to have by imposing mandatory liability insurance. We start with the principle that contracts which seek to exculpate one of the parties from liability for their own negligence are not favored. There are essentially three reasons why these contracts may not be enforceable. All of them apply in this case. They're set out by the North Carolina Supreme Court. All three of them apply? Yes, sir. You just have to show one of them, right? Correct. So if you're right on one out of three, you're going to, you should win? Yes, sir. That's your position? Which do you think is your strongest? The public policy argument, which is the one I'll address first. The third one? The third. The last. It's the last one in the brief because the- That's what, I mean, that's why the courts in North Carolina have laid them out. Right. And the way the district court went through it, and I follow the district court's analysis, but for here, I'd like to talk about that one first. It's or, there's an or in there, or public policy reasons or something. Yes. And you think that's your best shot? I do. The most developed case law involves the public policy exception. The North Carolina Supreme Court has stated that a party cannot protect himself by contracting against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved, or where public interest requires the performance of a private duty. An activity falls within the public policy exception when the activity is extensively regulated to protect the public from danger. What activity are you talking about here? Driving an automobile. On the highways in North Carolina? Right. On the public road. Yes, sir. And it would violate the public policy to allow persons engaged in this activity to absolve themselves from the duty to use reasonable care. That's from the Alston v. Monk case, quoted in Fortson v. McClellan. Driving is extensively regulated to protect the public from danger. Chapter 20 of the North Carolina statutes regulates motor vehicles. It is probably the most comprehensive set of regulations in the whole set of North Carolina statutes. Do you have to have insurance in North Carolina? You do. To drive, you mean to have a car on the road? Correct. The car has to have liability insurance? That's correct. With an exception in this case, which I'll talk about in a moment. And there's an exception? This one, yes, sir. For the government-owned vehicle. Is it federal government-owned vehicle? Yes. Not for any other government? I don't believe so. Well, I could be wrong on that. It could be that the state government's not required to either. The motor vehicle laws, if you compare them to other statutory regulations that have been found to be sufficient to invoke this exception to the enforcement of a release, these are the statutes that deal with the practice of medicine. Less than a tenth of the motor vehicle regulations. The cosmetology or cosmetic arts, 20 pages of statutes. The motor vehicle statutes run over a thousand. The skiing regulations, there are four pages of statutes. All of these other have been found sufficient regulations to warrant the exception to enforceability because of the extensive regulation of activities. The court below relied on some imprecise, loose language in another district court decision, Bertotti, instead of relying on the North Carolina cases that applied this public policy exception. Do the North Carolina cases explain how a court is supposed to identify what public policy is? How do we figure out what a public policy is? What the courts have said is an activity falls within the public policy exception when the activity is extensively regulated. How do you figure out what the public policy is in North Carolina? Well, the fact of extensive regulation to protect the public from danger. So, where do you look? In the Constitution, the statutes, the regulations? The statutes.  What's the... In this case, we look at the statutes. The motor... I mean, you've got to say that this release contravenes the public policy in North Carolina. Right. What's the best embodiment of the public policy in North Carolina, the statutes in North Carolina? The best embodiment in this case is the thousand plus pages of statutory regulation of motor vehicles and driving. How would the general public in North Carolina be put in any greater danger by enforcing this release with respect to Ms. McMurray? If this court, for the first time, approves a release involving a person driving a motor vehicle and violating the statutory rules of the road, everybody on the road is subject to the statutory rules of the road and can be injured by any other driver on the road. If a release like this is enforced, there is nothing to stop insurance companies in North Carolina from handing out pads of releases to their insurers and saying, before you have any passenger in your car, have them sign a release. That has never been approved. There's never been approval by a North Carolina appellate case of any release to protect somebody from liability for violating a statutory rule of the road. And that would affect the general public far beyond how Ms. McMurray is affected in this case. What's your best case from North Carolina? There are two cases that deal with motor vehicles that are being extensively regulated. One is Fortson v. McClellan, the motorcycle instruction case, where the Court of Appeals invalidated the release involving the motorcycle training course and held, in light of motorcycle instructions, hazards to the public and the extensive regulation of motorcycle use. It would violate public policy to allow instructors of motorcycle safety courses to absolve themselves from liability. If motorcycle use is extensively regulated, then the regulation of other motor vehicles other than motorcycles is obviously extensively regulated as well, and it would equally violate public policy to allow drivers of these other motor vehicles to escape liability. The other case is Hill v. the motor company case. What's the name of it? Hill. Hill? H-I-L-L? Hill v. Carolina Brake Carriers Corporation, which has the language in it about the law imposing on the trucking company and its employees the positive duty to observe the statutory rules of the road and operate vehicles at all times with due care and caution. This is a duty against which the defendant, in that case, may not protect itself by contract. That applies every bit as much to every driver on the road. All drivers pose dangers to the public at large, and no driver should be permitted to for violating statutory rules of the road. In this case, the district court made a distinction between heavily regulated activities and industries or entities that are heavily regulated. That's a distinction that does not exist in North Carolina law. There's no basis for it in North Carolina law, and it was error for the court to make that distinction. The activity of driving is heavily regulated, and that is sufficient to invoke the public interest. It's heavily regulated to protect the public from dangers on the road, and that's sufficient to invoke the principle that the release may not be enforced to protect the government from liability for its employee violating the statutory rule of the road. The second exception to enforceability, which also applies here, is that enforcement of the release would violate the law. In this case, there are two laws being violated. One is the red light statute. It's a statute that's punishable as an infraction. It's punishable with even greater punishment when, as in this case, there's serious injury caused by the violation of the statute. The statute itself in subsection D says that the facts relating to the failure to stop are to be considered with other facts in determining whether a party was guilty of negligence. And finally, the pattern jury instructions of North Carolina say that the failure to come to a complete stop would be negligence if a reasonable person under the same circumstances would stop. All of these factors establish that the government employee had a duty to stop for the red light. Now, the district court stated that for the statutory violation exception to apply, the statute must mandate a specific standard of care. There's no North Carolina case that says that. And... Let me ask you this question. Yes, sir. In your preparation for this case, did you check any other states to see if they took a similar position, that is, that releases for injuries incurred in automobile accidents are invalid as a matter of public policy? I did not. No ALR articles, anything like that? I did not, because this being a federal tort claim, that case, it's based on the law of North Carolina. Well, it always makes me, diversity cases always make me nervous. North Carolina doesn't have a certification procedure so that we could send this question to them for an answer. So I'm always wanting to make sure that what we do is not an aberration. I think it would be following North Carolina law to say that a release from liability for a driver who violates a statutory rule of the road is unenforceable, both for public policy reasons, for the fact that it violates the law by approving the violation of the statute that prohibits running a red light. And in addition, there's the specific statute that I've cited in the brief, 22-279.5C5, that exempts U.S. government employees from mandatory insurance requirements when they're operating vehicles in service to the government in the scope of their employment. That's it. But that's for insurance though, right? That's a security deposit. That's for collection purposes, right? But that's to ensure that there is insurance. It's convoluted. That's to ensure that there can be a collection made, and the government, you don't need that assurance from them, usually. Usually. But what the statute specifically says is that the government employee isn't required to have insurance because his activities are fully protected by the Federal Tort Claims Act, which affords ample security to all persons sustaining personal injury through the negligence of such federal employees. So they put in the exception because of the Federal Tort Claims Act. Exactly. And if the government's releasing... She's a guest passenger, right? She is. Your client? Yes, sir. That's what... Guest passengers are usually given more protection than anybody, aren't they? They are, and in this case, she was essentially forced to be a passenger if she was going to participate in the workshop because she was not allowed to make her own transportation arrangements. But she wasn't required to participate in that workshop. No. Right. But it was, which brings us to the third argument, that there was unequal bargaining power. She was required to have continuing education. This was a particular workshop that was important for her. Did her continuing education have to be fulfilled by attending this particular workshop? No, Your Honor, it did not. But this particular workshop was important to her, and that's the standard. Not it was the only one. But she wanted to go to this workshop because it specifically would help her counseling high school students in Cumberland County, where Fort Bragg is, with deciding which branch of service to attend. So, and the government... She was a counselor at the high school? Guidance counselor. Yes, sir. Which high school? Cape Fear, I believe. The... Well, I see that I've run out of time, so I'll... Okay. Well, you've got some time remaining for reply, Mr. Oyster. I'm wondering if she teaches any of your grandchildren. Good morning, Your Honors. Good morning, Mr. Oyster. May it please the Court, I'm Josh Royster, I represent the United States. Opposing counsel is correct. There's no North Carolina legal authority validating the releases like the release at issue here. But just as that is the case, there's no North Carolina case invalidating or prohibiting the releases like the release at issue here. The problem for the plaintiff is that the general rule, or the starting position, if you will, is that the parties are free to contract away liability, except in limited circumstances. And to apply... Could an insurance company do it? He mentioned insurance companies.  I'm wondering, as a guest passenger, get them to sign a release. That seems... And we won't have to... That way, we won't have to pay up if you've gone to red light and hurt them real bad. Sure, and that kind of gets to a point that I eventually want to make. That seems to be a bit more problematic than the situation that we have here. You would say they can't do that. I would think that the courts would have a lot more problem with that than what is happening here because... What's the difference between that and this? The difference... The difference is that this woman, this is the federal government involved. Sure. The difference, I believe, is that the insurance company is engaged in the business and holding itself out to the public as insuring drivers. Yeah, but this Marine, the Marine Corps is the federal government. It is, but... And they're getting this woman to waive any rights she might have under the Federal Tort Claims Act. The Marine Corps, though, is not engaged in the business or holding itself out to the public at large. And so the fallback position then, or the starting point, if you will, is that the parties are free to negotiate. But a Federal Tort Claims Act claim, administrative claim, as you know, before you come to court here that you ought to go through that procedure, it runs to the agency, right? Yes, sir. To the United States Marine Corps, right? Right. But that's just with respect to liability. That doesn't prohibit... Right. They made a claim against the Marine Corps, and the Marine Corps said, we don't have to claim because she signed a waiver before she got in the car, so we don't have to pay her medical expenses for getting hurt when she was a guest driver in this Marine Corps vehicle driven by the Marine Corps officer or sergeant because she signed the waiver, which is the same thing as the insurance company. I don't mean... I'm going back to it. How is that different from the insurance company? Again, I think the difference is... So they let them ride as a guest passenger. I think the difference here, or with respect to the insurance company, is that the insurance company is engaged in a business in holding itself out to the public to pay claims for liability. And the more claims they can get waived, the fewer they have to pay. Well, I do think... And the United States government's like a self-insurer under the Tort Claims Act, and the fewer claims they can have to pay, the more money they'll have in the government coffers, even though the Congress passed this Federal Tort Claims Act that makes itself liable for certain torts, including torts like this. And maybe I'm misunderstanding the Court's point, but I do think there is a difference between the provider of the service and a business that is holding itself out to the public to pay these claims for its negligent drivers. So that's the point. I've been thinking out loud about getting into this public policy thing more than I'd gotten into it before I came in here. Sure. It's interesting. Well... And on that point, Appellant Counsel said that Portson and Hill were, he believed, the strongest cases for his position on that point. What's your response to those two cases, particularly Portson? I actually think that those cases are the strongest for the government on that point. And here's why. Because both of those, when you look at the substantial public interest inquiry, or that exception, it's important, and this is the exact language from Portson, the issue is whether it would be against the public interest for those engaged in the heavily regulated activity to absolve themselves of liability. So it's important not that you just look at the activity as to whether it's heavily regulated,  In the Portson case, that party was engaged in the training of the use. It was a business to train people how to use a motorcycle. So they're holding themselves out to the public as providing this particular service, the business. The Hill case is a common carrier. And that is certainly different than what the government is in this situation. And didn't the Hill case apply to Georgia law? It did. But the application is similar in that there are North Carolina cases that deal with common carriers. When you look at the Portson case and the Hill case, and all the other cases, frankly, that are cited in both the parties' briefing on the substantial public interest, the one factor that is true throughout is that the concern is the party that is engaged in the activity regularly. It's the essential purpose, if you will, of that business. Yes, sir. No, I didn't want to interrupt that point, if you wanted to finish that, go ahead. I'm ready. Okay. The section you're talking about, when you're quoting from Portson, previously states, when the activity is extensively regulated to protect the public from danger. Now, teaching motorcycle riding is not extensively regulated. So I'm not sure the part you're reading should be read in isolation, but should be read in the context of the previous part of the sentence, which identifies the activity they're talking about that's engaged in as one that's heavily regulated. Sure, but I think the court is still looking at the party that's engaged in that particular activity is the point that I'm making, not just the activity itself. Would you agree motorcycle training is not heavily regulated? And if you don't agree with that, show me the regulations for motorcycle training. I'm frankly not aware. I can't point the court to any regulations that deal with motorcycle training. Certainly what they're getting at is the use of motorcycles, but the Portson case deals with the concern that people engaged in the business of providing safe training for motorcycle use. That's not what the sentence says. It says people engaged in an activity that is heavily regulated. Sure, and it goes on to say, and well, I understand the court's point. I think that the court in Portson goes on to say it gives rise to the substantial public interest exception if it would be against the public interest. So you do look to see whether the activity is heavily regulated. I get that. But then also, if it would be against the public interest to allow those engaged in an activity to absolve themselves of liability, then that's where the problem lies. And I think that's what the Portson case is getting at. We're not going to let those that are engaged in the business of providing safe training of motorcycle use to exculpate themselves from liability for poor training. Your Honors, with respect to the second exception, the unequal bargaining power, I think really what the more important part of that analysis is the context in which that exception applies. Those cases, and the Parker case is a perfect example of this, the unequal bargaining power exception appears to apply in more of a commercial setting. And that's not what we have here. This was a workshop that was provided to the plaintiff. She was free to participate in it or not. She was not forced to do so, obviously. But the Marine Corps wanted them to because they're trying to recruit. Sure, it's part of their... They want to recruit through the high schools, so they get the guidance counselors to come in and go to these training programs, and that enhances the recruiting program. It does. I understand that. Absolutely. And so they come up with this waiver. But it's... Do they consult with the Department of Justice and U.S. Attorney's Office on whether to get these waivers, and how they're going to be measured up under state law? Judge, I don't know the answer to that, frankly. I mean, you're saying that you're sort of the insurer here. You are. You're representing... I mean, you're the same thing as the insurance company. You're representing the Marine Corps. Sure, but I... And they got this waiver signed. I don't know, but... In order to try to get these people to come in there and help get the kids into the Marines, get them down to Parris Island. Sure. Then they run the red light and hurt her, and then we're not going to pay. Well, the issue, really, Judge, is on the... With respect to the exception, is whether it applies here, the unequal bargaining power. I don't know, frankly, if... Well, I'm not sure that's his best argument. Well, I don't think it is. I think his best argument is the public policy argument. I agree, and... I think that's his best argument. I don't disagree with that. And I think you've got a real problem on that one. I mean, it doesn't make sense that there's a class of people out there that aren't going to recover for injuries on the roads of North Carolina because they're being driven by military personnel to the seminars, and when they get hurt due to the negligence of the military, the military is given immunity from the military drivers and the military itself, and the United States government has given immunity from the tort claim. Judge, I think the problem with that is that would be a significant expansion of what the current state of the public policy and what the law is in North Carolina. No, it wouldn't. The statute says the United States is exempt because of the existence of the Federal Tort Claims Act, which will provide for them. Sure. And that's exactly where Ms. McMurray is. But it doesn't prohibit... That statute does not prohibit the United States from still entering into a release. That's not a guarantee that we're going to pay every claim, just because that statute exists. No. A release that... If it violates the public policy in North Carolina, it's no count. And the public policy in North Carolina is embodied in its statutory provisions. And its case law. And the state law. It's embodied in the state law and expressed by the legislature, and start there and go to the Fordson case and read it. That's the public policy. So, I mean, you can figure it out. I think it's really a close case. It's a shame we can't certify it, probably. Maybe we shouldn't have to certify it, because it's the United States that's trying to get out from under this thing. Maybe it ought to be the federal courts to deal with it, rather than the courts of North Carolina. Well, Judge, the burden... And this point is made in the reply brief, and not before then, in the appellant's reply brief. The burden... The appellant claims that the burden is on the government. And that's not actually the state of the law. That's not a correct characterization. The burden is on the party in North Carolina seeking to invalidate the release. So it's not the government's job to come into the court and show that the release is enforceable. And frankly, I'm not sure that it would matter, because the general rule, again, is that the release is enforceable unless one of these limited exceptions applies. And there's no case in North Carolina that says it invalidates driving releases generally. Well, the statute says there's an exception because of the Federal Tort Claims Act. And that's what she brought her claim under, the Federal Tort Claims Act. So she comes under the exception. She falls clearly in the exception. So the government doesn't have to carry insurance, but they have their obligations under the Tort Claims Act. And the analogy of the insurance company is you're the insurance company. The United States of America is the insurance company. Your client went out and got this thing signed up to exculpate themselves from their own negligence with a guest driver, guest passenger that they're driving down the highway there in Raleigh when they run the red light. And I guess I'd disagree with the court that the fact that that statute exists means that the government cannot still do just as any other party in North Carolina do, except in limited circumstances, contract away its liability. If it violates a statute, and I don't believe that it does here, there's no statute that prohibits. You said the insurance company couldn't do it. Well, I told you that I felt like that felt a lot different. And the United States is the self-insurer. You're the self-insurer. You're standing here. You're representing the United States of America. You're the assistant United States attorney. You're the self-insurer. But the government... You say that CNA couldn't do it. And the United States is different. Because it's the sovereign? Well, I don't know why it's different. Because the Tort Claims Act was to protect people hurt by negligence of government employees in the scope of their employment, and you don't raise any issues about that. Well, I did raise the issue with respect to my concern, the difference being that an insurance company is engaged in a business of insuring its drivers. And it feels a lot different. And I'm having a difficult time articulating... The United States is engaged in the business of insuring its drivers. It is. It's not a business, Judge. The Tort Claims Act is... The government is a self-insurer for the liability of government drivers, of government vehicles, in the scope of their employment. That's what the Tort Claims Act is. You're in the civil division of that. I mean, I bet you have a slew of these things with all the government facilities you have in eastern North Carolina. I just... I'm having a hard time accepting the court's proposition that the government is engaged in a business like an insurance company. I'm just making that analogy. It's providing a service to the plaintiff, and it ought to be able to contract itself out of liability for that. I'm taking liability away. Absolutely. Unless... I'm taking liability away. It should be able to do that. The public policy of North Carolina is that there's insurance. It's a mandate. It's an insurance mandate on a... If you have a vehicle in North Carolina, you've got to get insurance. And the government's accepted from that because of the Federal Tort Claims Act. I understand the court's position. We could probably go all day, Judge, but you don't want me to do that, and I know the rest of the panel doesn't want me to do that. Probably nobody else in the courtroom other than you and me could do it. But let me just address this other exception briefly, if I might, with respect to it violating a statute, and the particular statute that they rely on being the red light statute. The plaintiff essentially attempts to convert a mere traffic violation into a standard of care by casting it as a duty not to run a red light. And here's the problem with that analysis. It's not a duty that's owed to anybody. I understand that it's a duty not to run a red light. It's a duty owed to everybody. A driver's not to run a red light. It's a duty owed... To the driving public. It's not a duty... You don't have to run a red light because somebody else has the green light. Sure, but it's not a duty that creating a standard of care in such that it is owed to a person. It's a duty not to run a red light. Yes, sir. But it's not a duty for... If you stop at your red lights, I have to try to stop at mine, too. We have a duty to. But it's not a duty that's owed to the plaintiff or to anybody else. It's owed to the public. It's owed to the driving public, to the safety of the driving public. I mean, you don't want somebody coming through the green light with a car full of children. Absolutely not. The duty to protect them is on the driver that's got the red light. Stop. It's a duty to stop at the red light. It does not create a standard of care to the public. If it did, the statute would say it's negligence per se to run the red light. And here it doesn't. So that statute governing the use of car on the roads creates a duty? No, sir. That's not what I'm saying. It does create a duty to follow the law and to follow that statute. What I'm saying is it doesn't create a duty owed to the plaintiff or anyone else. It doesn't create a standard of care to follow that law. If that's the law in North Carolina, it is sure different from where I come from. Well, for purposes of the negligence analysis, Judge, she has to be owed a duty and that's the point that I'm trying to make. In North Carolina, it is not a violation of a statute negligence per se? It's not. The statute specifically says that. That's where the difference is. Where I come from, it is negligence per se. It's just a difference in law. And if the statute did say that it was negligence per se, then that arguably would create a duty owed to the plaintiff in this case. But it doesn't. It specifically says that it's not. And so that's why it doesn't violate the statute. Because it doesn't undercut the statute. And the Strawbridge case is a perfect example of that where the court says or the court notes that the statute related to the ski operators specifically prohibits willful or negligent conduct. And there's no North Carolina statute with respect to driving that has that kind of language in it. The closest thing is what the plaintiff has attempted to do here, which is cast this as a duty of care owed to her. And it's not. If the court doesn't have any more questions, I will end my time and ask that you affirm the district court. Thank you. Thank you. A reply? The government started with the proposition that the parties are free to contract away their liability. The North Carolina Supreme Court has said that while the freedom of contract is fundamental, the public interest is paramount. Public interest overrides the right of freedom of contract. And if the contractual provision is violative of law or contrary to some rule of public policy, it's void and unenforceable. That's from the Miller's Mutual Insurance v. Parker case, the case involved with Parker. So just because parties can contract doesn't mean that that's sacred and protected when the contract violates public policy. Separate from whether, or in addition to whether insurance companies are in the business of and private citizens start having their passengers sign releases. The question is going to be, does the release protect the driver? And the court in North Carolina deciding that is going to look at insurance specifically because the lease contract is between two private parties just like it is here. And yes, the insurance company is behind it, and yes, the insurance company benefits if it's insured or released from liability. But the private contract that would absolve somebody from liability for negligence for violating statutory rules of the road would violate public policy and would also result in approving violations of statutes when the negligence involved in the case arose out of the violation of a statute. The Hill case, Your Honor, did also cite North Carolina cases in addition to Georgia law. All of the North Carolina cases that are on this topic talk about the activity. The government's argument of trying to make some distinction between the person involved in the activity and the activity itself, that's a distinction without a difference. The North Carolina cases look at, is the activity heavily regulated? Driving is heavily regulated, and therefore that's an expression of the public interest and an attempt to avoid liability for violating a statutory rule of the road. One of those aspects of the heavy regulation violates public policy. It's the United States that actually wants to expand the law of North Carolina to the extent of a release that's never been approved in North Carolina before. Perhaps the reason it's not been approved is because nobody has dared and thought it would work to have a release from liability for violating the statutory rules of the road that pertain to driving. That's maybe why there's no case that specifically deals with this. The fact that the red light statute says it's not negligence per se doesn't end that inquiry. If you go on to subsection D of the statute, it says that the facts surrounding the failure to stop can be considered in deciding whether or not there's negligence. So the statute certainly provides a standard that drivers must abide by, the breach of which is negligence. That's why there's a pattern jury instruction in North Carolina specifically dealing with negligence in running a red light and violating that statute. The notion that per se is required just doesn't apply. The example of that might be if I'm stopped at a red light and the car behind me hits me and pushes me through the intersection, I violated the red light statute, technically. I went through the intersection on a solid red light, but I'm not negligent because you consider the circumstances of why I went through the light. Very briefly, on the unequal bargaining power argument, the district court erred in two ways. One is by granting summary judgment and not taking the facts as set out by Debbie McMurray and her complaint and affidavit to be true, saying that there were other sources of information. That's not what her affidavit says. It says this is the only place she could get the information and experiences, and also that it was important to her to attend this particular workshop. Summary judgment should not have been granted under those circumstances in addition to getting the law wrong on her ability to decline to participate in the workshop being equivalent to equal bargaining power. That just is the complete reverse of what the law is. Thank you. Thank you very much. I'll ask the clerk to adjourn court, and then we'll come down and agree counsel. This honorable court stands adjourned, signed and died.
judges: William B. Traxler Jr., Robert B. King, Stephanie D. Thacker